## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JOE RIVERA,

      Plaintiff,

v.                                                CV No. 15-3 CG/GBW

McCOY CORPORATION,

      Defendant.

## <u>JUDGMENT</u>

**THIS MATTER** is before the Court following a bench trial conducted on December 13 and 14, 2016. (Doc. 109). Plaintiff Joe Rivera claims Defendant McCoy Corporation violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New Mexico Minimum Wage Act ("MWA"), N.M. STAT. ANN. § 50-4-19 *et seq.*, by failing to pay Plaintiff overtime wages. (Doc. 1 at 4-5). The Court has reviewed the parties' *Trial Briefs*, (Docs. 115-17, 120), and *Proposed Findings and Conclusions of Law*, (Docs. 118-19), all filed December 5, 2016. Additionally, the Court has reviewed *Plaintiff's Supplemental Brief*, (Doc. 129), and Defendant *McCoy's Supplemental Brief Regarding the Meaning of Supervisor under the MWA*, (Doc. 128), both filed January 31, 2017. Having considered the evidence presented, the filings, and applicable law, the Court makes the following Findings of Fact and Conclusions of Law:

### I.    <u>Findings of Fact</u>

1.  Defendant employed Plaintiff as an Assistant Store Manager ("ASM") at its Roswell, New Mexico, store (the "Roswell store") from May 12, 2014, to August 13, 2014.

2.   Plaintiff underwent a fourteen week training program prior to becoming an ASM. The training covered numerous topics, including Defendant's business practices and procedures. When Plaintiff was trained, the training program cost $31,000 per trainee. (Doc. 127 at 30).

3.   Defendant paid Plaintiff an annual salary of $38,000. This equates to a weekly salary of $730.77. Plaintiff received a $1,500 bonus for completing the training program and was eligible for end of the year bonuses based on the company's profitability.

4.   Plaintiff regularly worked more than 40 hours a week while employed at the Roswell store. Defendant did not pay Plaintiff any overtime because it classified him as an overtime-exempt "executive" employee.

5.   Defendant did not require Plaintiff to clock in or out at the beginning or end of the workday. (Doc. 125 at 10, p.37 l.12-15; at 14, p. 52 l. 4-8).

6.   During the time Plaintiff worked as an ASM at the Roswell store, the store employed between 12 and 14 employees at any given time. The Roswell store Manager was Marisa Mapp.  Ms. Mapp and Plaintiff were the only management employees at the Roswell store.

7.   Both Ms. Mapp and Plaintiff worked 5 days a week with two days off. Plaintiff and Ms. Mapp jointly managed the store four days a week and each managed alone one day a week.  On the days that Ms. Mapp was not at the store, Plaintiff was the only manager at the store and oversaw store operations. On the days both Ms. Mapp and Plaintiff were present, they shared management responsibilities for the store.

8.   Plaintiff and Ms. Mapp were the only two employees at the Roswell store with the authority and ability to: direct, counsel, and discipline employees; approve time off

requests; allow employees to leave early; make time clock adjustments; sign off on drug tests; open and close the store, including setting and disarming the alarms; and offer credit accounts to customers. When Ms. Mapp was not at the store, Plaintiff was the only employee with the ability and authority to perform the foregoing tasks. (Doc. 125 at 36, p.141-143).

9.   Plaintiff performed the following managerial tasks while employed at the Roswell store: directed employees to stop goofing off and get back to work on at least one occasion; administered five drug tests; handled an incident in the store in which a customer collapsed, including filling out the appropriate paperwork; addressed the cashiers on one occasion regarding how they greeted customers; approved two days of time off for an employee; occasionally performed "yard walks"; and regularly received reports on inventory, time-sheets, and other store information. Additionally, Plaintiff regularly armed and disarmed the Roswell store's alarm and set up the cash registers for the day.

10.   Plaintiff handled two employee-related disputes. First, Plaintiff handled an argument two employees had at the store, including filling out the appropriate paperwork. Second, Plaintiff interviewed an employee accused of giving a customer too much product and documented the incident.

11.   During his employment at the Roswell store, Plaintiff spent the vast majority of his time performing the same types of non-managerial tasks as the non-exempt hourly employees.  These tasks included, for example, stocking shelves, assisting customers, arranging merchandise (what Defendant calls "zoning"), loading and unloading vehicles,

sweeping, mopping, and otherwise cleaning the store, performing yard work, and working the cash register.

12. Plaintiff performed yard walks and safety inspections, but nonexempt employees performed those duties as well.

13. Plaintiff participated in two interviews for prospective employees while employed at the Roswell store. Plaintiff expressed reservations regarding both employees, but both were hired.

14. Although Plaintiff's job description outlines numerous managerial responsibilities, Plaintiff did not actually perform many of them. (*See* Doc. 111, Ex. 28). For instance, Plaintiff did not assist Ms. Mapp in analyzing or preparing various reports, profit and loss statements, ordering or managing inventory, or scheduling. Ms. Mapp testified she showed Plaintiff the scheduling system but did not transfer scheduling responsibility to him. (Doc. 125 at 69, p.273-75). Other employees at the Roswell store were primarily responsible for managing inventory, scheduling deliveries, and creating "bid packages" for high-volume customers. (Doc. 125 at 8, p.29 l.5-15; at 9, p.32 l.20-23; at 48, p.186 l.19-24; at 65, p. 256 l.2 to p.257 l.9).

15. The Roswell store employees were typically long-tenured or otherwise responsible employees who did not need or receive direct supervision; they knew their duties and performed them.

16. For instance, Plaintiff was Toni Sturdevant's supervisor according to Ms. Mapp. Ms. Sturdevant was the Roswell store's "Retail Inventory Coordinator," (Doc. 103, Ex. 5), and was responsible for managing the Roswell store's inventory, (Doc. 125 at 65,

p.256 l.2-12). Ms. Sturdevant worked at the Roswell store for ten years before Plaintiff arrived. (Doc. 125 at 13, p.48 l.14-22).

17. Another employee, Salvador Padilla, testified he could run the whole Roswell store and that Plaintiff never directed his work. Mr. Padilla stated he would have listened to Plaintiff, but Plaintiff simply never supervised him. (Doc. 125 at 52, p.204 l.8-18). Plaintiff "probably" directed a cashier to work, but Mr. Padilla did not recall a specific instance. (Doc. 125 at 53, p.208 at 15 to p.209 at 2).

## II. **Conclusions of Law**

### A. **Rule Against Double Recovery**

1. Double recovery is forbidden "when alternative theories seeking the same relief are pled and tried together." *Clappier v. Flynn*, 605 F.2d 519, 530 (10th Cir. 1979). When "a federal claim and a state claim arise from the same operative facts, and seek identical relief, an award of damages under both theories will constitute double recovery." *U.S. Indus., Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1259 (10th Cir. 1998), *overruled on other grounds by TW Telecom Holdings, Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

2. In this case, Plaintiff seeks unpaid overtime wages, prejudgment interest, statutory liquidated damages, and attorneys' fees under both the MWA and the FLSA. (Doc. 1 at 5-6; Doc. 122 at 3). Plaintiff presented the same operative facts for both claims. Accordingly, recovery under both the MWA and FLSA would constitute impermissible double recovery.

3. Under the MWA, Plaintiff would be entitled to his unpaid overtime wages, interest, and an additional amount "equal to twice the unpaid or underpaid wages." N.M.

STAT. ANN. § 50-4-26(D) (2013). Under the FLSA, Plaintiff could receive, at most, his unpaid overtime wages and either an additional equal amount or prejudgment interest. *Doty v. Elias*, 733 F.2d 720, 726 (10th Cir. 1984). Thus, Plaintiff would be entitled to greater recovery under the MWA. The Court will therefore consider whether Plaintiff may recover under the MWA first.

### B. The MWA

4.   The MWA was passed "to establish minimum wage and overtime compensation standards for all workers at levels consistent with their health, efficiency, and general well-being," as well as to "safeguard . . . against the unfair competition of wage and hours standards which do not provide adequate standards of living." N.M. STAT. ANN. § 50-4-19 (1955). New Mexico courts recognize this is a remedial purpose. *N.M. Dep't of Labor v. A.C. Elec., Inc.*, 1998-NMCA-141, ¶ 13, 965 P.2d 363, 366 (N.M. Ct. App. 1998).

5.   In interpreting the MWA, the Court's "responsibility is to search for and give effect" to the legislature's intent. *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶ 44, 918 P.2d 1321, 1334 (N.M. 1996). New Mexico courts "first consider and apply the plain meaning" of statutory language. *Id.* at ¶ 45. But, applying plain meaning "does not require a mechanical, literal interpretation of the statutory language," and a literal interpretation may be rejected to avoid an absurd result. *Id.*

6.   The Court must liberally construe the MWA pursuant to its remedial purpose. *N.M. Dep't. of Labor v. Echostar Commc'n Corp.*, 2006-NMCA-047, ¶ 7, 134 P.3d 780, 782 (N.M. Ct. App. 2006). Further, the Court must strictly construe exceptions to the MWA. *A.C. Elec.,* 965 P.2d at 366. Unjust and absurd interpretations should be

avoided, even if that means rejecting the statute's literal language. *See Cummings*, 918 P.2d at 834; *Sinclaire v. Elderhostel, Inc.*, 2012-NMCA-100, ¶ 10, 287 P.3d 978, 981 (N.M. Ct. App. 2012). Rather, the Court should interpret the MWA "according to its obvious spirit or reason." *Sinclaire*, 287 P.3d at 981(citing *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 9, 212 P.3d 361, 364 (N.M. 2009)).

7.   Unlike the FLSA, the MWA does not have extensive accompanying regulations defining and interpreting the statutory language. However, New Mexico courts have frequently looked to interpretations of the FLSA in order to interpret similar language in the MWA. *See Williams v. Mann*, 2017-NMCA-012, 388 P.3d 295 (N.M. Ct. App. 2016); *Armijo v. Wal-Mart Stores, Inc.*, 2007-NMCA-120, ¶ 47, 168 P.3d 129, 144 (N.M. Ct. App. 2007); *Valentine v. Bank of Albuquerque*, 1985-NMSC-033, 697 P.2d 489 (N.M. 1985); *Garcia v. Am. Furniture Co.*, 1984-NMCA-090, ¶ 13, 689 P.2d 934, 937 (N.M. Ct. App. 1984). Thus, the Court may look to interpretations of the FLSA in order to interpret the MWA.

8.   The MWA does not state whose burden it is to prove exemption from the MWA. The Court therefore interprets the MWA consistently with the FLSA, which provides that it is an employer's burden to prove an employee meets an exception. *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 826 (10th Cir. 2012); *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1190, 1184 (10th Cir. 2004).

9.   The MWA defines "employee" as "an individual employed by an employer." N.M. STAT. ANN. § 50-4-21(C) (2008). The MWA excludes individuals employed in an executive capacity and "supervisors" from its minimum and overtime wage requirements. § 50-4-21(C)(2).

10. Plaintiff was employed by Defendant and is therefore an employee under the MWA.

11. New Mexico law does not define "supervisor," and there are no published cases construing the term. The plain meaning of "supervisor" is someone who supervises, which in turn means "to be in charge of; superintend, oversee." *Supervise*, THE MERRIAM-WEBSTER DICTIONARY (2017), https://www.merriam-webster.com/dictionary/supervise.

12. Although Plaintiff possessed supervisory authority over other employees and employees testified they viewed Plaintiff as their supervisor, that evidence is insufficient to prove Plaintiff should be exempt from the MWA as a supervisor. Otherwise, employers could simply grant nonexempt employees minimal supervisory authority and avoid paying minimum and overtime wages. Such a result would be absurd, unjust, and contrary to the MWA's remedial spirit and purpose.

13. As explained further below, supervision was a relatively small part of Plaintiff's actual job. Plaintiff was solely in charge of the store one day a week; every other day, Ms. Mapp was also at the store supervising Plaintiff and the other employees. Even when Ms. Mapp was not at the store, Plaintiff performed mostly menial, manual tasks such as cleaning, stocking, loading trucks, helping customers, and working a cash register. Thus, based on Plaintiff's actual job duties and performance, the Court finds he was not a supervisor within the meaning of the MWA.

14. An employee is exempt from the MWA overtime provisions as an "executive" if he: (1) "perform[s] non manual work related to management of business" as his "primary duty"; (2) exercises discretion; (3) regularly assists executive work or performs

specialized work or assignments; and (4) performs less than 20 percent nonexempt work. 11.1.4.7(C) NMAC.

1.  *Plaintiff's Primary Duty*

15.  The New Mexico Administrative Code does not define or elaborate on the meaning of "primary duty" or "management." However, the requirement is substantially similar to a requirement for the executive exception under the FLSA. *See* 29 C.F.R. § 541.100(a)(2) (2016) (exempting from overtime wages an employee "[w]hose primary duty is management of the enterprise in which the employee is employed").

16.  Under the FLSA, "'management' includes, but is not limited to, activities such as interviewing, selecting, and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees; maintaining production or sales records for use in supervision or control; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; handling employee complaints and grievances; disciplining employees; planning the work; determining the techniques to be used; apportioning the work among the employees; determining the type of materials, supplies, machinery, equipment or tools to be used or merchandise to be bought, stocked and sold; controlling the flow and distribution of materials or merchandise and supplies; providing for the safety and security of the employees or the property; planning and controlling the budget; and monitoring or implementing legal compliance measures." 29 C.F.R. § 541.102.

17.  "Primary duty" means "the principal, main, major, or most important duty that the employee performs." 29 C.F.R. § 541.700(a). Courts must determine an employee's

primary duty "based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.*

18.  "Factors to consider" in determining primary duty "include, but are not limited to the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." *Id.*

19.  Although Plaintiff was solely in charge of the Roswell store once a week, Plaintiff spent the vast majority of his time performing manual tasks that were not management-related, such as cleaning, stocking, loading trucks, and helping customers. Plaintiff performed safety checks of the yard and delivery trucks, but nonexempt employees also regularly performed safety checks, so they may not be considered managerial. *See* 29 C.F.R. § 541.703(b)(3) (providing that spot checking may be managerial "so long as the checking is distinguishable from the work ordinarily performed by a nonexempt inspector").

20.  Significantly, Plaintiff did not perform many of the managerial duties in § 541.102. Plaintiff did execute some managerial duties, like addressing two employee disputes and "provid[ing] for the safety and security of the employees or the property" by opening and closing the store each day. But Plaintiff simply did not perform many quintessentially managerial duties like scheduling, maintaining and ordering inventory, or directing and apportioning employees' work.

21. Several courts have found an employees' primary duty was management even when those employees spent the majority of their time performing non-exempt work. *See Baldwin v. Trailer Inns, Inc.*, 266 F.3d 1104 (9th Cir. 2001) (managers claiming 90% of their time was spent on nonexempt work); *Donovan v. Burger King Corp.*, 672 F.2d 221, 225-27 (1st Cir. 1982) ("*Burger King I*"); *Donovan v. Burger King Corp.*, 675 F.2d 516 (2d Cir. 1982) ("*Burger King II*") (collectively the "Burger King Cases"); *Moore v. Tractor Supply Co.*, 352 F.Supp.2d 1268 (S.D. Fla. 2004) (manager claiming 95% of time spent on nonexempt tasks). However, these cases are distinguishable from Plaintiff's circumstance. For instance, in the Burger King Cases, assistant managers were left alone in charge nearly the entire time they worked, and they scheduled employees, assigned work, oversaw product quality, spoke with customers, trained employees, determined the quantity of food to make, and performed recordkeeping, inventory, and cash reconciliation duties. *Burger King I*, 672 F.2d at 223; *Burger King II*, 675 F.2d at 517. Here, Plaintiff was solely in charge of the Roswell store only one day a week, rather than every day, and did not schedule or direct employee work, determine the amount of inventory to order, train employees, or perform recordkeeping or inventory reconciliation.

22. In *Baldwin*, trailer park managers' "principal value" to their employers was overseeing the park's operation without any daily supervision or direction whatsoever. *Baldwin*, 266 F.3d at 1115; *see Reich v. State of Wyo.*, 993 F.2d 739, 742 ("The employee's primary duty is that which is of principal importance to the employer. . ."). Again, Plaintiff was not left alone to oversee the Roswell store or solely responsible to

the store's success; Plaintiff's principal value to Defendant appears to have been as an extra hand to help out around the Roswell store and allow Ms. Mapp a day off.

23. By contrast, in *Moore*, the manager of a farm and ranch equipment retailer performed several significant managerial duties, including conducting 90 day performance evaluations; training, coaching, and counseling employees; handling employee compensation, scheduling, and vacation; and managing payroll and store expenses. *Moore*, 352 F.Supp.2d at 1269-70. Plaintiff simply did not have similar responsibilities and duties.

24. The exempt duties Plaintiff actually performed were relatively unimportant.  As discussed, Plaintiff performed managerial tasks like administering routine drug tests, arming and disarming the Roswell store's alarm, and setting up cash registers. Overall, these were minor, perfunctory tasks that were not relatively more important to the store's functioning than Plaintiff's menial, non-managerial duties, which he performed much more frequently. *See Burger King II*, 675 F.2d at 521 (defining relative importance as those tasks "being most important or critical to the success" of the employer's business).

25. Further, Plaintiff was not relatively free from direct supervision. As stated, four of the five days Plaintiff worked at the Roswell store, Ms. Mapp was there supervising Plaintiff as well as the other employees. Here again, the circumstances are significantly different than the Burger King Cases or *Baldwin*, where the managers were solely in charge nearly the entire time they worked.

26. The final factor, Plaintiff's salary and wages compared to other employees for similar nonexempt work, weighs in favor of finding Plaintiff's primary duty was

12

management. Plaintiff earned $730.77 per week. Divided by 40 hours, that equals an hourly rate of $18.27. *See Echostar*, 134 P.3d at 784 (dividing an employee's weekly pay by 40 to arrive at an hourly rate). Defendant paid other employees, at most, $12.00 an hour for the kind of nonexempt work Plaintiff performed. (Doc. 103, Ex. 5). Although two employees at the Roswell store earned $15.00 an hour, Plaintiff did not perform similar work as those employees, who were responsible for managing inventory and special orders. (Doc. 125 at 46, p.178 l.13-18). Plaintiff's eligibility for bonuses also weighs in favor of finding his primary duty was managerial under this factor. *See Slusser v. Vantage Builders, Inc.*, 576 F.Supp.2d 1207, 1219 (D.N.M. 2008).

27.  Considering all the facts of this particular case and emphasizing the character of Plaintiff's job as a whole, the Court finds the principal, main, and most important duties Plaintiff performed were the manual tasks unrelated to management such as stocking, cleaning, and helping customers; not non-manual, management-related duties. Plaintiff spent so little time performing supervisory, managerial work, and that work was so insignificant, that it could not be considered his "primary" duty.

### 2.  *Remaining Requirements under NMAC 11.4.1.7(C)*

28.  Regarding the second requirement, Plaintiff exercised little, if any, meaningful discretion. Plaintiff's job description describes various areas where Plaintiff could have exercised discretion. For instance, Plaintiff had the authority and discretion to order supplies and extend credit to customers. However, he never did either. Case law suggests "discretion" in this context "must be more than that which normally characterizes direction of work of others. It too must be critical to the success of the enterprise." *Guthrie v. Lady Jane Collieries, Inc.*, 722 F.2d 1141, 1146 (3d Cir. 1983)

(interpreting 29 C.F.R. § 541.103 (1983)). No evidence was presented that Plaintiff exercised discretion "critical to the success" of the Roswell store. Neither Plaintiff's authority to exercise discretion nor Defendant's expectation that Plaintiff exercise discretion proves Plaintiff actually exercised discretion or was required to as an ASM.

29.  Third, Plaintiff did not regularly assist executive work or performed specialized work or special assignments. Plaintiff's job description included preparing monthly, quarterly, and annual reports. (Doc. 111, Ex. 28 at 1). However, Plaintiff did not participate in preparing monthly or quarterly reports while working for Defendant. (Doc. 125 at 62, p. 243). Nor did Plaintiff regularly assist Ms. Mapp in any other executive or specialized work while employed at the Roswell store.

30.  Finally, the Court finds Plaintiff spent more than 20% of his time performing nonexempt work. Plaintiff testified he spent 95% of his time performing non-managerial tasks. (Doc. 125 at 10, p.37 l.24 to 11, p.38 l.16). Ms. Mapp estimated Plaintiff "should" have spent 25-30% of his time performing manual, non-managerial work. (Doc. 125 at 66, p. 265). Thus, even the evidence most favorable to Defendant indicates Plaintiff exceeded the 20% threshold.

31.  Ms. Mapp testified that managers "never take off" the managerial "hat," even when stocking or helping customers. (*Id.*). While this may affect the primary duty analysis, the sheer amount of time Plaintiff spent performing nonexempt work disqualifies him from exemption under the MWA. *See Burger King I*, 672 F.2d at 227-28 (stating that supervising while stocking or cleaning may pertain to primary duty but applies differently under a time requirement); *Burger King II*, 675 F.2d at 518-22 (same). The ASM Job Description provides that ASMs should only perform non-managerial work

14

"as needed," (Doc. 111, Ex. 28), but even Ms. Mapp testified that takes up 25-30% of an ASM's time.

32. For the foregoing reasons, Defendant failed to prove Plaintiff met any requirement to be exempt as an executive under the NMWWA.

33. Because Plaintiff is an employee covered by the MWA, Defendant's failure to pay Plaintiff overtime wages violates N.M. STAT. ANN. § 50-4-22(D).

**C. Damages**

34. The MWA provides that an employer who violates the MWA "shall be liable to the employee[ ] affected in the amount of [his] unpaid or underpaid minimum wages plus interest, and in an additional amount equal to twice the unpaid or underpaid wages." N.M. STAT. ANN. § 50-4-26(C) (2013).

35. Unlike the FLSA, the MWA does not explicitly mention overtime wages, creating an ambiguity whether the MWA's remedies are available for unpaid overtime wages as well as "minimum wages" or "wages." *See* 29 U.S.C. § 216 (providing employers shall be liable to employees "in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be"). Although the language is ambiguous, the Court must liberally construe the MWA pursuant to its remedial purpose. *A.C. Elec., Inc.*, 965 P.2d at 366. Interpreting the MWA to preclude any damages for unpaid overtime would be contrary to the MWA's remedial purpose, spirit, and intent. Accordingly, Plaintiff is entitled to his unpaid overtime wages, interest on the unpaid wages, and treble damages.

15

36. Despite the rule against double recovery, plaintiffs may recover liquidated damages under the FLSA, which are compensatory, and punitive damages under state minimum wage laws. *See Evans v. Loveland Auto. Invs., Inc.*, No. 15-1049, 632 Fed. App'x. 496, (10th Cir. Dec. 10, 2015) (unpublished).

37. Even assuming damages under the MWA are punitive, the Court may choose not to award liquidated damages under the FLSA if Defendant showed it had "reasonable grounds" for believing Plaintiff was an exempt employee and acted in "good faith." 29 U.S.C. § 260.

38. "The good faith requirement mandates the employer have 'an honest intention to ascertain and follow the dictates'" of the FLSA. *Renfro v. City of Emporia*, 948 F.2d 1529, 1540 (10th Cir. 1991) (quoting *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982)). The "reasonable grounds" element "imposes an objective standard by which to judge the employer's behavior." *Brunner*, 668 F.2d at 753.

39. Defendant consulted an employment and labor attorney multiple times, contacted other construction retail companies, studied federal statutes and regulations, and researched industry publications. (Doc. 127 at 22-29). These actions indicate an honest intention to ascertain and comply with the FLSA. The Court therefore finds Defendant acted in good faith.

40. Further, the Court finds Defendant acted objectively reasonably in classifying the ASM position as exempt. The ASM Job Description contains numerous managerial duties and responsibilities, and Plaintiff underwent extensive training in order to perform those duties and responsibilities. Based on its extensive research and training program, Defendant reasonably believed Plaintiff would perform exempt work in general and that

ASMs generally perform the exempt work they're trained to do. Finally, as discussed, Defendant consulted an attorney multiple times and was assured each time that the ASM job description met the executive exemption. This is "particularly persuasive" evidence Defendant acted reasonably. *Pabst v. Okla. Gas & Elec. Co.*, 228 F.3d 1128, 1136 (10th Cir. 2000) (citing *Cross v. Ark. Forestry Comm'n*, 938 F.2d 912, 917-18 (8th Cir. 1991)).

41. Because Defendant acted in good faith and objectively reasonably, Plaintiff is not entitled to liquidated damages under the FLSA.

42. Defendant did not maintain timekeeping or payroll records of Plaintiff's compensable hours. However, based on the times Plaintiff both armed and disarmed the Roswell store alarm, he appears to have worked roughly eleven hours and forty minutes each day, typically longer. (Doc. 103, Ex. 27). In the absence of precise timekeeping records, Plaintiff's compensable work hours were 58 hours a week based on just and reasonable inference (11.6 hours x 5 days = 58 hours). *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1047 (2016); (Doc. 119 at 2).

43. Plaintiff's hourly rate was $18.27, which means Plaintiff's overtime wage was $27.40 ($18.27 x 1.5). Plaintiff worked 58 hours a week, resulting in 18 hours of unpaid overtime per week for 13 weeks. $27.40 multiplied by 18 hours, multiplied again by 13 weeks, equals $6,411.60 in unpaid overtime wages. Plaintiff is entitled to an additional $12,823.20, which is equal to twice his unpaid overtime. § 50-4-26(C).

44. Plaintiff is also entitled to interest on his unpaid overtime. *Id.* New Mexico law provides for post-judgment interest at 8.75% unless judgment is based on a written instrument providing otherwise, a defendant's tortious conduct, or a defendant's bad

17

faith, willful, or intentional acts. N.M. STAT. ANN. § 56-8-4(A) (2004). As discussed, the Court finds Defendant acted in good faith. None of the other circumstances in § 56-8-4(A) apply here; therefore 8.75% post-judgment interest is appropriate.

45.   The Court may award up to ten percent prejudgment interest from the date Defendant was served with the complaint "after considering, among other things: (1) if the plaintiff was the cause of unreasonable delay in the adjudication of plaintiff's claims; and (2) if the defendant had previously made a reasonable and timely offer of settlement to plaintiff." § 56-8-4(B).

46.   Adjudication of this case involved conditional class certification, plaintiffs opting into the class, then plaintiffs dropping out, and ultimately decertification of the conditional class. These delays were not necessarily caused by Plaintiff, nor were they unreasonable.

47.   As far as the Court is aware, Defendant never made an offer of settlement, let alone a "reasonable and timely" offer. Defendant was consistently unwilling to participate in a settlement conference and denied willingness to consider settling this case at the pretrial conference in November, 2016. (Doc. 111).

48.   Finally, the Court has again considered the MWA's remedial nature, which weighs in favor of fully compensating Plaintiff. Given these considerations, the Court finds ten percent an appropriate prejudgment interest rate.

49.   Additionally, Defendant is liable to Plaintiff for his costs and reasonable attorneys' fees. § 50-4-26(E).

50.   In sum, Defendant is liable to Plaintiff for: $6,411.60 in unpaid overtime wages; ten percent interest on $6,411.60 from January 9, 2015, the date the complaint was

18

served, (Doc. 3), through the date Defendant pays Plaintiff the judgment; post-judgment interest on $6,411.60 from the date judgment is entered to the date Defendant pays Plaintiff the judgment; $12,823.20 in treble damages; costs; and reasonable attorneys' fees. Plaintiff shall move for attorneys' fees in accordance with Federal Rule of Civil Procedure 54.

### III.   Judgment

For the foregoing reasons, the Court finds Plaintiff was an employee covered by the MWA and was not compensated for hours he worked in excess of forty, in violation of N.M. Stat. Ann. § 50-4-21(C). A Final Judgment consistent with these findings and conclusions shall be entered in Plaintiff's favor.

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE